**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| **KUMKANG KIND CO., LTD.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**UNITED STATES,**<br><br>**Defendant.** | **Court No. 26-04728** |

## COMPLAINT

Plaintiff, Kumkang Kind Co., Ltd. ("Plaintiff" or "Kumkang Kind"), by and through its counsel, hereby alleges and states as follows:

## JURISDICTION

1. Plaintiff brings this action pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(iii) to contest certain aspects of the final results of the 2023–2024 administrative review of the antidumping duty order on *Certain Oil Country Tubular Goods from the Republic of Korea*, Case No. A-580-870, issued by the International Trade Administration of the U.S. Department of Commerce ("Commerce"). *See Certain Oil Country Tubular Goods From the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2023–2024*, 91 Fed. Reg. 60,583 (Sep. 24, 2026) ("*Final Results*"), and the accompanying unpublished Issues and Decision Memorandum ("Final IDM"); *see also Certain Oil Country Tubular Goods From the Republic of Korea: Final Results of Antidumping Duty Administrative Review; 2023–2024; Correction*, 91 Fed. Reg. 73,528 (Nov. 16, 2026) ("*Amended Final Results*").

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c) because this appeal is taken pursuant to 19 U.S.C. § 1516a.

**STANDING**

3. Plaintiff, Kumkang Kind, is a foreign producer and exporter of subject oil country tubular goods ("OCTG") from the Republic of Korea, and therefore is an interested party within the meaning of 19 U.S.C. § 1677(9)(A). Kumkang Kind participated in the administrative review proceeding leading to the *Final Results* as a non-selected respondent by requesting an administrative review, entering an appearance, filing an application for counsel to have access to information under the administrative protective order, and filing legal arguments in connection with certain aspects of that decision which impacted the non-examined companies' rate applied to Kumkang Kind. Accordingly, Kumkang Kind has standing to commence this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

**TIMELINESS OF THE ACTION**

4. On September 24, 2026, Commerce published the *Final Results* in the Federal Register. *Final Results*, 91 Fed. Reg. 60,583. On October 23, 2026, Kumkang Kind timely filed a Summons initiating this action within thirty days of the publication of the *Final Results*. *See* ECF No. 1. This Complaint is timely filed as the last day of the period to file a complaint under Rule 3(a)(2) fell on Sunday, November 22, 2026, and the next day that is not a Saturday, Sunday, or legal holiday is November 23, 2026. Accordingly, this action is timely filed under 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and Rules 3(a)(2) and 6(a) of this Court.

**STATEMENT OF FACTS**

5. On October 17, 2024, Commerce initiated the 2023–2024 administrative review of the antidumping duty order on OCTG from Korea. *See Initiation of Antidumping and*

*Countervailing Duty Administrative Reviews*, 89 Fed. Reg. 83,644 (Oct. 17, 2024). The period of review was September 1, 2023, through August 31, 2024. On December 5, 2024, Commerce selected NEXTEEL and SeAH Steel Corporation ("SeAH") as mandatory respondents.

6. On February 18, 2025, the domestic interested parties submitted a so-called "cost-based" particular market situation ("PMS") allegation. On May 5, 2025, Commerce accepted the domestic interested parties' PMS allegation and established deadlines for interested parties to submit factual information to rebut, clarify, or correct the information in the domestic interested parties' PMS. Following the receipt of the PMS allegation, Commerce issued the domestic interested parties multiple requests for additional information regarding the allegation. SeAH and NEXTEEL filed rebuttal information and comments concerning the PMS allegation and the domestic interested parties' supplemental submissions.

7. On June 4, 2025, Commerce invited interested parties to submit information for calculating constructed value ("CV") profit and selling expenses because NEXTEEL and SeAH had reported they lacked viable home or third-country markets. On June 13, 2025, NEXTEEL, SeAH, and the domestic interested parties submitted financial statements for multiple companies as potential sources. The domestic interested parties submitted Tenaris S.A.'s ("Tenaris") 2024 financial statements, and NEXTEEL and SeAH submitted financial statements for multiple companies, including Alleima, Borusan Birleşik Boru Fabrikaları Sanayi ve Ticaret Anonim Şirketi ("Borusan Boru"), and Voestalpine AG ("Voestalpine").

8. On March 16, 2026, Commerce published the *Preliminary Results* in the Federal Register. *See Certain Oil Country Tubular Goods Antidumping Duty Administrative Review;* 2023–2024, 91 Fed. Reg. 12,575 (Mar. 16, 2026) ("*Preliminary Results*"), and accompanying Preliminary Decision Memorandum ("Preliminary IDM"). Commerce preliminarily calculated

weighted-average dumping margins of 0.00 percent for NEXTEEL and SeAH. In the *Preliminary Results*, Commerce found that a cost-based PMS affected Korean hot-rolled coil ("HRC"), an input used to produce OCTG, and applied a cost adjustment derived from the domestic interested parties' regression model. Commerce also used the combined financial statements of Alleima, Borusan Boru, and Voestalpine to calculate a combined CV profit rate of 2.72 percent. *See* Preliminary IDM at 4, 15–17. Commerce found the three producers' profits from OCTG sales provided a reasonable proxy for profits on sales of comparable merchandise for consumption in Korea.

9. In the *Preliminary Results*, while Commerce calculated 0.00 percent weighted-average dumping margins for both mandatory respondents, NEXTEEL and SeAH, it preliminarily assigned above de-minimis rates to the non-examined companies, including Kumkang Kind. Specifically, Commerce determined that the zero percent rate yielded by the expected method would not reasonably reflect the non-examined companies' potential dumping margins. Commerce therefore carried forward prior reviews' rates and assigned Kumkang Kind a preliminary rate of 11.70 percent. *See Preliminary Results*, 91 Fed. Reg. at 12,576; and Prelim IDM at 6–7.

10. Following the *Preliminary Results*, on March 20, 2026, Commerce requested information on the variable cost of manufacturing HRC in the United States during the POR. On April 16, 2026, the domestic interested parties submitted U.S. hot-rolled band ("HRB") pricing data from SteelBenchmarker. On April 20, 2026, NEXTEEL and SeAH submitted rebuttal information. On June 11, 2026, Commerce issued its Post-Preliminary Analysis, in which it calculated the PMS adjustment using a price benchmark in place of the regression model. *See* Department Memorandum, "Post-Preliminary Analysis for the Administrative Review of the

Antidumping Duty Order on Certain Oil Country Tubular Goods from the Republic of Korea; 2023–2024" (June 11, 2026) ("Post-Preliminary Analysis").

11. On June 25, 2026, interested parties, including Kumkang Kind, submitted case briefs. NEXTEEL challenged Commerce's PMS finding, the decision to adjust NEXTEEL's reported HRC costs, and the reasonableness of the price-benchmark methodology. NEXTEEL also presented alternative methodologies in the event Commerce retained its PMS finding. In their case brief, the domestic interested parties urged Commerce to only use Tenaris 2024 financial statements to calculate CV profit and selling expenses. Kumkang Kind filed a case brief challenging Commerce's preliminary departure from the expected method and argued that, if both mandatory respondents received zero or de-minimis margins in the Final Results, Commence should apply the expected method and assign Kumkang Kind a 0.00 percent rate. Kumkang Kind also incorporated by reference the mandatory respondents' arguments concerning Commerce's post-preliminary PMS determination, arguing that it affected its own rate. Interested parties submitted rebuttal briefs on July 7, 2026, and Commerce held a hearing on July 29, 2026.

12. On September 24, 2026, Commerce published the *Final Results*, which retained the cost-based PMS finding and calculated the adjustment using U.S. SteelBenchmarker HRB pricing data. *See Final Results*, 91 Fed. Reg. at 60,583–84, and Final IDM at Cmt. 2. In the *Final Results*, Commerce also replaced the three preliminary financial sources with Tenaris' 2024 financial statements as the sole basis for calculating CV profit and selling expenses ratios for NEXTEEL and SeAH. Commerce found that Tenaris' 2024 financial statements better reflected OCTG sales and that Borusan Boru's 2024 annual report showed a negative profit ratio. *See* Final IDM at Cmt. 1.

13. Commerce calculated above de-minimis margins for both NEXTEEL and SeAH and assigned Kumkang Kind a 19.87 percent rate for non-examined companies based on the simple average of those margins. *See Final Results*, 91 Fed. Reg. at 60,584. Commerce therefore concluded that Kumkang Kind's conditional argument for applying the expected method was moot.

14. On October 23, 2026, Kumkang Kind filed its Summons with this Court challenging the *Final Results*. *See* ECF No. 1. On November 16, 2026, Commerce published an *Amended Final Results*, correcting NEXTEEL's final margin as 29.18 percent and the non-examined companies margin as 19.49 percent. *See Amended Final Results*, 91 Fed. Reg. 73,528.

**STATEMENT OF CLAIMS**

15. The *Final Results* are unsupported by substantial record evidence and otherwise not in accordance with law in the following aspects:

**COUNT I**

16. Paragraphs 1 through 15 of this Complaint are incorporated herein by reference.

17. In the *Final Results*, Commerce determined that a cost-based PMS affected the price of HRC used to produce OCTG in Korea during the POR. Commerce found that Chinese steel overcapacity and imports of low-priced Chinese HRC suppressed Korean HRC prices. Commerce also considered Korean government measures affecting the steel industry and the provision of electricity. *See* Final IDM at Cmt. 2, pp. 13–15, 20–23.

18. To quantify the PMS adjustment, Commerce used U.S. HRB sales-price data from SteelBenchmarker as the benchmark for adjusting the mandatory respondents' HRC costs. The domestic interested parties submitted those sales-price data in response to Commerce's request for information on the variable cost of manufacturing HRC in the United States. Commerce

found the sales-price data appropriate because NEXTEEL and SeAH purchased HRC from external suppliers and because Commerce considered the U.S. market better insulated from Chinese steel overcapacity. *See* Final IDM at Cmt. 2, pp. 18–19, 23–24.

19. Commerce's PMS determination and resulting adjustment directly affected the dumping margins calculated for NEXTEEL and SeAH and, in turn, the rate assigned to Kumkang Kind. In its administrative case brief, Kumkang Kind incorporated by reference the mandatory respondents' arguments concerning Commerce's post-preliminary PMS determination.

20. Commerce's finding that the alleged PMS distorted Korean HRC prices and its use of a U.S.-only HRB benchmark to qualify that distortion are unsupported by substantial evidence or otherwise not in accordance with law. The record does not adequately establish that the alleged market conditions distorted the mandatory respondents' HRC costs during the POR. Commerce also did not adequately explain why the difference between U.S. HRB sales prices and the respondents' Korean HRC purchase prices reasonably measured any distortion attributable to the alleged PMS. Kumkang Kind challenges those determinations as they directly affected its final rate. Kumkang Kind recognizes that the mandatory respondent NEXTEEL is separately challenging Commerce's determination through its own appeal to this Court (CIT Case No. 26-04697 NEXTEEL Co., Ltd. v. United States). Kumkang Kind concurs with the complaint filed by NEXTEEL in that proceeding.

**COUNT II**

21. Paragraphs 1 through 20 of this Complaint are incorporated herein by reference.

22. In the *Final Results*, Commerce calculated above de-minimis margins for NEXTEEL and SeAH and assigned Kumkang Kind, a non-examined company, a rate based on

the simple average of those margins. Commerce subsequently corrected Kumkang Kind's rate to 19.49 percent. Commerce treated Kumkang Kind's conditional expected-method argument as moot because both mandatory respondents received above de-minimis margins. *See Final Results*, 91 Fed. Reg. at 60,583–84; *Amended Final Results*, 91 Fed. Reg. at 73,528–29; Final IDM at Cmt. 6, p. 39.

23. Because Commerce derived Kumkang Kind's rate from the mandatory respondents' margins, the errors alleged in Count I also affect Kumkang Kind's rate. Likewise, any other errors or factors that the mandatory respondents may raise in complaints in actions to this Court would also affect Kumkang Kind's rate. Thus, if the Court remands the *Final Results* for recalculation of either mandatory respondent's margin, Commerce must also redetermine Kumkang Kind's rate based on the recalculated margins. If both mandatory respondents receive zero or de-minimis margins on remand, Commerce should apply the expected method under 19 U.S.C. § 1673d(c)(5)(B) unless it supports a departure with substantial record evidence. As Kumkang Kind argued before Commerce, the existence of its prior 11.70 percent rate, standing alone, does not establish that the rate reasonably reflects potential dumping during the POR.

## REQUEST FOR RELIEF

For the foregoing reasons, Kumkang Kind respectfully requests that this Court hold the foregoing aspects of Commerce's *Final Results* unsupported by substantial record evidence and otherwise not in accordance with law. Therefore, Kumkang Kind respectfully requests that this Court remand the *Final Results* to Commerce to correct the errors set forth in this Complaint and provide other such relief as this court deems appropriate.

Respectfully submitted,

/s/ J. David Park
J. David Park
Henry D. Almond
Kang Woo Lee
Archana Rao Vasa
Sally Alghazali
Jennifer “Ellie” Farrin

*Counsel to Kumkang Kind Co., Ltd.*
*Plaintiff*

ARNOLD & PORTER KAYE SCHOLER LLP
601 MASSACHUSETTS AVENUE, N.W.
WASHINGTON, D.C. 20001
PHONE: (202) 942-5646
FAX: (202) 942-5999

**Dated: November 23, 2026**